Rafael Carrión, recurrente, *v.* El Registrador de la Propiedad de Caguas, recurrido.

No. 862.—*Sometido:* Febrero 10, 1932.—*Resuelto:* Febrero 15, 1932.

*R. Cintrón Lastra,* abogado del recurrente; el registrador recurrido compareció por escrito.

El Juez Presidente Señor del Toro, emitió la opinión del tribunal.

Presentada para su inscripción en el registro de la propiedad de Caguas la escritura de venta judicial otorgada por el márshal de la Corte de Distrito de Humacao a favor de Rafael Carrión, el registrador se negó a ello por medio de la siguiente nota:

"Denegada la inscripción del presente documento, que es la escritura No. 33 de fecha 23 de noviembre de 1931, otorgada en Hu-

macao ante el Notario Rafael Cintrón Lastra, por observarse que en la ejecución de la hipoteca y venta en pública subasta no se ha seguido el procedimiento de acuerdo con lo dispuesto en la Ley Número 69 aprobada por nuestra Legislatura el día 2 de mayo de 1931; . . .''

No conforme Carrión, interpuso el presente recurso gubernativo.. Sostiene que no puede darse efecto retroactivo a la Ley No. 69 de 1931. El registrador alega que puede, porque se trata de un precepto de carácter procesal vigente al tiempo de verificarse la venta cuya inscripción se solicita.

La cuestión envuelta es de gran importancia, porque su resolución marcará el procedimiento a seguir en gran número de casos que deben encontrarse en las mismas condiciones.

Parece conveniente aclarar mejor los hechos. Son así: Don Nicasio Pérez y su esposa reconocieron adeudar a Juan Sixto Marcano cierta suma de dinero y en garantía de su pago hipotecaron una finca rústica que tenían en el barrio de Beatriz del término municipal de Caguas. El contrato se verificó el 8 de octubre de 1927, por escritura pública que se inscribió en el registro. Más tarde, en 19 de junio de 1931, el acreedor hipotecario cedió sus derechos a Rafael Carrión quien, vencida la deuda, demandó su cobro por el procedimiento sumario hipotecario que instó en la Corte de Distrito de Humacao. Admitido el procedimiento, y vencido el término del requerimiento al deudor sin que la deuda fuera pagada, la corte, el 17 de octubre de 1931, ordenó al secretario que expidiera mandamiento al márshal para la ejecución de la hipoteca. El mandamiento se expidió; se anunció por el márshal la venta de la finca hipotecada y se vendió en efecto el 18 de noviembre de 1931, de acuerdo con la Ley de 9 de marzo de 1905, al mejor postor, que lo fué el propio acreedor hipotecario. El 23 del propio mes de noviembre, el márshal otorgó la correspondiente escritura de venta judicial que fué la que se llevó al registro y causó la nota que dejamos transcrita.

Vigente como estaba a la fecha del otorgamiento de la escritura de hipoteca la dicha Ley de 9 de marzo de 1905 relativa a las sentencias y manera de satisfacerlas, no había que consignar el precio en que tasaban la finca los contratantes. A este respecto recientemente dijo esta corte por medio de su Juez Asociado Sr. Wolf, en el caso de *Jordán* v. *Registrador de Utuado*, 43 D.P.R. 19, lo que sigue:

"La Ley Hipotecaria de 14 de julio de 1893 disponía en su artículo 127 lo siguiente:

" 'En la escritura de hipoteca se hará constar el precio en que tasan la finca los contratantes, para que sirva de tipo a la única subasta que se debe celebrar, en el caso de que, vencido el plazo del préstamo no conste en el Registro de la Propiedad el pago de dicho préstamo.'

"En varias decisiones de este tribunal, Porto Rican Leaf Tobacco Co. v. Registrador, 23 D.P.R. 507; Cintrón et al. v. Banco Territorial y Agrícola, 15 D.P.R. 507; Giménez et al. v. Brenes, 10 D.P.R. 128, se ha resuelto que la ley de marzo 9, 1905, que alteró la forma de ejecutar las hipotecas, hizo que la expresión del valor de la finca, conforme lo exigía la sección 127 de la Ley Hipotecaria, careciera de fin o necesidad prácticos. Por tanto, por lo menos hasta el 1º de mayo de 1931, era innecesario expresar el valor de la propiedad al otorgarse una escritura de hipoteca.

"El recurrente sostiene que la Ley No. 69 no podía tener efecto retroactivo y por tanto que no era aplicable a un notario que otorgara una escritura en julio 11, 1931. El registrador sostiene que la disposición del artículo 127 de la Ley Hipotecaria nunca fué en realidad abrogada y que la Ley No. 69 siendo solamente una disposición adjetiva podía revivir definitivamente el artículo 127 de la Ley Hipotecaria aun respecto a escrituras otorgadas con anterioridad al 30 de julio de 1931.

"Creemos que el registrador está equivocado. Las leyes son prospectivas. La ley de 1905 estuvo en vigor hasta el 30 de julio de 1931. Con anterioridad a dicha fecha las partes celebraban sus contratos de acuerdo con la ley existente y con su forma de ejecución. La ley de 1905 no fué derogada con respecto a escrituras otorgadas antes de empezar a regir la Ley No. 69.''

Y siendo ello así, no vemos que pueda exigirse que la su-

basta se verifique con arreglo a un justiprecio que no había la obligación de hacer y que en verdad no se hizo.

La Ley No. 69, de 1931, debe interpretarse en su integridad. Restablece el artículo 127 de la Ley Hipotecaria que fija un método completo de ejecución que arranca desde el otorgamiento de la escritura. Dice:

"LEY para enmendar el artículo 127 de la Ley Hipotecaria vigente, y para otros fines.

"*Decrétase por la Asamblea Legislativa de Puerto Rico:*

"Artículo 1.—El artículo 127 de la Ley Hipotecaria vigente queda enmendado en la forma siguiente:

" 'Artículo 127.—En la escritura de hipoteca se hará constar el precio en que tasan la finca los contratantes, para que sirva de tipo a la primera subasta que se debe celebrar, en el caso de que, vencido el plazo del préstamo, no conste en el registro de propiedad el pago de dicho préstamo.

" 'Si no produjere remate ni adjudicación la primera subasta, en la segunda que se celebrare servirán de tipo las dos terceras partes del precio en que hayan tasado la finca los contratantes, pero cuando esas dos terceras partes no excedieren de la cuantía de las responsabilidades preferentes, esa cuantía señalará el mínimo de las posturas admisibles.

" 'Si tampoco hubiere remate ni adjudicación en la segunda subasta, regirá como tipo en las otras subastas que pudieran celebrarse el valor total a que ascienden los créditos preferentes.'

"Artículo 2.—Las disposiciones de la Ley de 9 de marzo de 1905, relativa a las sentencias y la manera de satisfacerlas, en cuanto se opongan a los preceptos del artículo 127 de la Ley Hipotecaria, según queda enmendado por el artículo anterior, y toda otra ley, o parte de ley, que esté en contradicción con la presente, quedan derogadas.

"Artículo 3.—Esta Ley empezará a regir a los noventa días después de su aprobación.

"*Aprobada en 2 de mayo de 1931.*"

Sólo, pues, es de exigirse que se siga en la ejecución el procedimiento fijado en el artículo 127 cuando se trata de hipotecas que deban otorgarse de acuerdo con lo ordenado en la propia Ley, esto es, de documentos contentivos de con-

tratos celebrados a partir del 31 de julio, 1931 en que empezó a regir la repetida ley. Y ése no es aquí el caso.

El caso de *Henna et al.* v. *Saurí y Subirá,* 22 D.P.R. 836 en que parece basar su criterio el registrador, no tiene el alcance que le atribuye, porque en él se tuvo en cuenta que el artículo 175 del Reglamento Hipotecario disponía "que los acreedores que tuvieran inscrito su derecho con anterioridad a la vigencia de la ley podrían optar por el procedimiento sumario que ella establecía, pero que cuando los títulos de sus créditos no expresasen la conformidad del deudor con un precio determinado para la subasta, habrían de acreditar ésta, consignada en documento público, o pedir el justiprecio, con arreglo a la Ley de Enjuiciamiento Civil, para preparar el anuncio de la subasta", (22 D.P.R. 849) y aquí no se optó por el nuevo procedimiento.

*Debe revocarse la nota recurrida y ordenarse la inscripción solicitada.*